IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

ORLANDO HARE,

Plaintiff,

v.

JAMES T. PLOUSIS, et al.,

Defendants.

Civil Action
No. 14-1343 (AET-TJB)

**OPINION**

RECEIVED
NOV 02 2015
AT 8:30 M
WILLIAM T. WALSH
CLERK

APPEARANCES:

Orlando Hare, Plaintiff Pro Se
55 Christoph Street
Trenton, New Jersey 08618

**THOMPSON, District Judge:**

## I. INTRODUCTION

Before the Court is Plaintiff Orlando Hare's ("Plaintiff"), submission of an amended civil rights complaint pursuant to 42 U.S.C. § 1983. (Docket Entry 4). By Order dated September 18, 2015, this Court granted Plaintiff's application to proceed *in forma pauperis*. (Docket Entry 16) At this time, the Court must review the complaint pursuant to 28 U.S.C. § 1915A to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief. For the reasons set forth below, the Court concludes that the complaint shall be dismissed. Plaintiff shall

be given leave to move to amend his complaint in certain respects.

**II. BACKGROUND**

On June 23, 2010, Plaintiff, who was at that time incarcerated at Bayside State Prison, was approved for placement into a halfway house. (Docket Entry 4 ¶ 13). He was transferred to the Albert M. "Bo" Robinson Assessment and Treatment Center on December 22, 2010. (Docket Entry 4 ¶ 14). No furlough restrictions or special conditions were placed on Plaintiff's residence. (Docket Entry 4 ¶ 14). He was thereafter transferred to Kintock Halfway House, then to Fletcher House, again without any restrictions or special conditions placed on his residence. (Docket Entry 4 ¶ 14).

At some point in time, Kintock House submitted a Furlough Site Investigation request. (Docket Entry 4 ¶ 15). As no one ever responded to this request, Plaintiff asked his case manager in July 2011 to submit a new site investigation request. (Docket Entry 4 ¶ 15). Defendant Fred Brodsky, an officer with the New Jersey Parole Board, visited Plaintiff's proposed furlough site on August 16, 2011, and left a message for his sponsor, April Keel. (Docket Entry 4 ¶ 16). Ms. Keel later called Defendant Brodsky and answered his questions about her home, including the fact that she had two teenage children residing in her home. (Docket Entry 4 ¶ 17). When she indicated that she would be

purchasing a new home in October 2011, Defendant Brodsky assured her that Plaintiff would be furloughed before then. (Docket Entry 4 ¶ 17).

As of November 11, 2011, however, Plaintiff had not received an answer regarding his furlough. (Docket Entry 4 ¶ 18). He submitted an administrative appeal to the Appeals Unit of the Parole Board regarding the "failure to investigate and approve [his] furlough site within (45) days of the 8/14/11 and 8/16/11 site visitation and sponser [sic] interview which was ultimately forwarded to defendant Dickinson for response." (Docket Entry 4 ¶ 18). Plaintiff alleged Defendants Dickinson and Brodsky had previously delayed his release on parole in 2001 after he hired an attorney. (Docket Entry 4 ¶ 18).

Defendant Dickinson sent Plaintiff a letter dated December 23, 2011, responding to the appeal submitted by Plaintiff in November. (Docket Entry 1-1 at 11). The letter indicated that the investigation into Plaintiff's furlough location began on August 14, 2011, however it was delayed "due to some administrative difficulties in obtaining required background information pertaining to your case . . . ." (Docket Entry 1-1 at 11). The requested information was obtained on December 16, 2011, and the Parole Board gave Plaintiff's request "priority consideration" at that time. (Docket Entry 1-1 at 11). The letter went on to state that the information confirmed that

Plaintiff's "case involved a Division of Youth and Family Services ["DYFS"] matter and [Plaintiff is] not to be allowed to reside with and/or have unsupervised contact with minor children." (Docket Entry 1-1 at 11). After a re-investigation confirmed the presence of two minor children, the Parole Board rejected Plaintiff's furlough at that location. (Docket Entry 1-1 at 11, 8). Defendant Dickinson invited Plaintiff to contact him with any questions. (Docket Entry 1-1 at 12).

Plaintiff further alleges that on December 23, 2011, Defendant Brodsky and a DYFS employee visited Ms. Keel's home again. (Docket Entry 1-1 at 4). He asserts Defendant Brodsky told her about Plaintiff's old manslaughter conviction and asked her for the names, addresses, and phone numbers of her closest relatives. (Docket Entry 4 ¶ 19; Docket Entry 1-1 at 4).

Plaintiff wrote to Defendant Dickinson on January 11, 2012 asking him to provide information regarding the denial of his furlough. (Docket Entry 1-1 at 16). He specifically requested any documentation regarding the condition that he is not allowed reside with minor children. (Docket Entry 1-1 at 16). After Defendant Dickinson failed to respond to his inquiries, Plaintiff appealed to Defendants James Plousis, the Chairman of the Parole Board, and Anne McGrath, the Director of the Division of Parole, on February 4, 2012. (Docket Entry 4 ¶ 22; Docket Entry 1-1 at 3). Defendants Plousis and McGrath had not

responded to Plaintiff as of May 4, 2012. (Docket Entry 4 ¶ 23). Plaintiff originally submitted his complaint on February 26, 2014, (Docket Entry 1), and this amended complaint on June 10, 2014, (Docket Entry 4).

Plaintiff alleges Defendants Dickinson, Sovinee, and Brodsky violated his constitutional rights when they failed to conduct a timely furlough investigation and when they denied his furlough request. (Docket Entry 4 ¶¶ 24-25). He asserts the prohibition from living with minor children was improperly imposed against him because its imposition exceeded their authority as parole officers and because such a restriction is only applicable to sex offenders. (Docket Entry 4 ¶¶ 26-28, 34-35). He also claims Defendant Brodsky violated his privacy when he discussed Plaintiff's criminal history with Ms. Keel. (Docket Entry 4 ¶¶ 30-31). Furthermore, he claims Defendant Dickinson violated his rights when he did not respond to Plaintiff's requests for information. (Docket Entry 4 ¶ 29). Plaintiff alleges Defendants Plousis and McGrath conspired with the other Defendants to deprive him of his furlough, (Docket Entry 4 ¶ 32), and violated his rights when they did not respond to his administrative appeals. (Docket Entry 4 ¶ 33).

Plaintiff seeks compensatory damages in the amount of $540,000, $250,000 for loss of companionship against all Defendants, and $750,000 in damages against Defendants Plousis

and McGrath. (Docket Entry 4 ¶ C.1-4). He also seeks $200,000 against Defendant Brodsky for violating his privacy, (Docket Entry 4 ¶ C.5); punitive damages against all Defendants, (Docket Entry 4 ¶ D); and an injunction against the Parole Board.

## III. DISCUSSION

### A. Standards for a Sua Sponte Dismissal

Per the Prison Litigation Reform Act, Pub. L. No. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (April 26, 1996) ("PLRA"), district courts must review complaints in those civil actions in which a prisoner is proceeding *in forma pauperis*, *see* 28 U.S.C. § 1915(e)(2)(B), seeks redress against a governmental employee or entity, *see* 28 U.S.C. § 1915A(b), or brings a claim with respect to prison conditions, *see* 42 U.S.C. § 1997e. The PLRA directs district courts to *sua sponte* dismiss any claim that is frivolous, is malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. This action is subject to *sua sponte* screening for dismissal under 28 U.S.C. §§ 1915A because Plaintiff is seeking redress from a governmental entity or employee.[1]

---

[1] A plaintiff is a "prisoner" under the PLRA if he was a prisoner confined in a correctional facility on the date the complaint was filed. *Ahmed v. Dragovich,* 297 F.3d 201, 210 (3d Cir. 2002). Plaintiff was confined in Northern State Prison at the time he filed his complaint in February 2014, therefore he meets the PLRA's definition of a "prisoner."

In determining the sufficiency of a pro se complaint, the Court must be mindful to construe it liberally in favor of the plaintiff. *See Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007) (following *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)); *see also United States v. Day*, 969 F.2d 39, 42 (3d Cir. 1992).

According to the Supreme Court's decision in *Ashcroft v. Iqbal*, "a pleading that offers 'labels or conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). To survive *sua sponte* screening for failure to state a claim,[2] the complaint must allege "sufficient factual matter" to show that the claim is facially plausible. *Fowler v. UPMS Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 308 n.3 (3d Cir. 2014)

---

[2] "The legal standard for dismissing a complaint for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) is the same as that for dismissing a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6)." *Schreane v. Seana*, 506 F. App'x 120, 122 (3d Cir. 2012) (citing *Allah v. Seiverling*, 229 F.3d 220, 223 (3d Cir. 2000)); *Mitchell v. Beard*, 492 F. App'x 230, 232 (3d Cir. 2012) (discussing 28 U.S.C. § 1997e(c)(1)); *Courteau v. United States*, 287 F. App'x 159, 162 (3d Cir. 2008) (discussing 28 U.S.C. § 1915A(b)).

(quoting *Iqbal*, 556 U.S. at 678). Moreover, while *pro se* pleadings are liberally construed, "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (citation omitted).

**B. Section 1983 Actions**

A plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of his constitutional rights. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ....

§ 1983. Thus, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988); *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

**C. Eleventh Amendment**

To the extent Defendants are sued in their official capacities as members of the Parole Board and Parole Officers, those claims must be dismissed as barred by the Eleventh Amendment.

A suit against a public official "'in his or her official capacity is not a suit against the official but rather is a suit against the official's office . . . .'" *Printz v. United States*, 521 U.S. 898, 930-31 (1997) (quoting *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989)). The *Will* Court concluded that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." 491 U.S. at 71; *see also Smith v. New Jersey*, 908 F. Supp. 2d 560, 563-64 (D.N.J. 2012). Plaintiff's claims against Defendants in their official capacities are therefore in reality claims against the State of New Jersey. *See Keller v. Pa. Bd. of Prob. & Parole*, 240 F. App'x 477, 479 (3d Cir. 2007).

As nothing in the complaint suggests New Jersey has waived sovereign immunity, the claims against Defendants in their official capacities must be dismissed with prejudice.

**D. Statute of Limitations**

Plaintiff alleges various federal constitutional claims arising out of the 2011 denial of furlough against Defendants Dickinson, Sovinee, and Brodsky. *See* Docket Entry 4 ¶¶ 24-26,

28, 29, 30, and 34-35. As some of these constitutional claims are barred by the statute of limitations for § 1983 claims, the Court will address each barred claim by the date on which Plaintiff alleges the harm occurred.

**1. September 30, 2011**

Plaintiff alleges Defendants Dickinson, Sovinee, and Brodsky violated the Fifth, Eighth, and Fourteenth Amendments when they "knowingly purposely and with malicious intent delayed with aforethought to ultimately reject plaintiff's furlough site failed to render a decision within (45) days of his site verification/sponser [sic] interview . .. ." (Docket Entry 4 ¶ 24).

**2. December 22, 2011**

Plaintiff further alleges Defendants Dickinson, Sovinee, and Brodsky violated the Fifth and Fourteenth Amendment when they conspired to deny him due process by making a "'predetermined' decision to reject plaintiffs furlough site . . . ." (Docket Entry 4 ¶ 25). He also alleges they violated the First, Fifth, Eighth, and Fourteenth Amendments on that date by "exercis[ing] authority they did not lawfully have" when they rejected his furlough site due to the presence of minor children and in retaliation for hiring an attorney to assist him with obtaining parole in 2001. (Docket Entry 4 ¶ 26). He also asserts Defendants Dickinson, Sovinee, and Brodsky conspired to violate

his rights by "wield[ing] supervisory authority over plaintiff, his furloughs and furlough conditions or restrictions while he was solely under the lawful supervision, custody . . . of the N.J. Department of Corrections/Fletcher Halfway House and not parole." (Docket Entry 4 ¶ 28). He further alleges these defendants violated his rights when they imposed a "cruel/unusual punishment on plaintiff a 'Parole Condition' reserved for sex offenders **on parole** . . . when they unlawfully stated that plaintiff was not allowed to reside with/or have unsupervised contact with minor children" without prior written notice or a valid certificate of parole and Parole conditions. (Docket Entry 4 §§ 34-35) (emphasis in original).

Plaintiff alleges Defendant Dickinson violated the First, Fifth, Eighth, and Fourteenth Amendments when he ignored Plaintiff's request for information regarding the denial of his furlough. (Docket Entry 4 ¶ 29).

**3. December 23, 2011**

Plaintiff alleges Defendant Brodsky violated the First, Fifth, Eighth, and Fourteenth Amendment when he visited Ms. Keel's home on December 23, 2011 and informed her of Plaintiff's aggravated manslaughter charge, (Docket Entry 4 ¶ 30).[3]

[3] Plaintiff also raised state claims against Defendant Brodsky for invasion of privacy. (Docket Entry 4 ¶ 31). As the federal claims are being dismissed, the Court declines to exercise

The statute of limitations on civil rights claims is governed by New Jersey's two-year limitations period for personal injury. *See Wilson v. Garcia*, 471 U.S. 261, 276 (1985); *Dique v. New Jersey State Police*, 603 F.3d 181, 185 (3d Cir. 2010). The date that a cause of action under § 1983 accrues, however, is a matter of federal law. *See Kach v. Hose*, 589 F.3d 626, 634 (3d Cir. 2009) (citing *Gentry v. Resolution Trust Corp.*, 937 F.2d 899, 919 (3d Cir. 1991)). "Under federal law, a cause of action accrues, and the statute of limitations begins to run when the plaintiff knew or should have known of the injury upon which its action is based." *Ibid.* (internal quotation marks and citations omitted).

According to Plaintiff's complaint, the wrongful actions occurred on September 30, 2011 (Docket Entry 4 ¶ 24); December 22, 2011 (Docket Entry 4 ¶¶ 25-26, 28, 34-35); and December 23, 2011 (Docket Entry 4 ¶¶ 29-30). Plaintiff's claims of denial of due process, conspiracy, and retaliation accrued when he knew or should have known of the injury upon which his action is based, *i.e.*, the agreement to deny furlough on September 30, the denial of furlough and imposition of the contested condition on December 22, 2011, and the visit to Ms. Keel's home on December 23, 2011. The limitations period therefore expired on September

---

supplemental jurisdiction over the state law claims. 28 U.S.C. § 1367(a).

30, December 22 and 23, 2013, respectively. Plaintiff mailed this complaint on February 26, 2014, two months after the latest statute of limitations expired. (Docket Entry 1 at 16).

As it is apparent from the face of the complaint that the federal constitutional claims from paragraphs 24, 25, 26, 28, 29, 30, 34, and 35 are barred by the statute of limitations, they must be dismissed.[4] As Plaintiff cannot cure this deficiency, the dismissal of these claims is with prejudice. *See Ostuni v. Wa Wa's Mart*, 532 F. App'x 110, 111-12 (3d Cir. 2013) (per curiam); *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002).

**E. Due Process**

Plaintiff further alleges that between December 22, 2011 and May 4, 2012,[5] Defendants Dickinson, Sovinee, and Brodsky

---

[4] *See Ostuni v. Wa Wa's Mart*, 532 F. App'x 110, 111-12 (3d Cir.2013) (per curiam) ("Although the running of the statute of limitations is ordinarily an affirmative defense, where that defense is obvious from the face of the complaint and no development of the record is necessary, a court may dismiss a time-barred complaint sua sponte under § 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim."); *see also Cruz v. SCI-SMR Dietary Servs,*, 566 F. App'x 158, 160 (3d Cir. 2014); *Hunterson v. Disabato*, 244 F. App'x 455, 457 (3d Cir. 2007) (per curiam) ("[A] district court may sua sponte dismiss a claim as time-barred under 28 U.S.C. § 1915A(b)(1) where it is apparent from the complaint that the applicable statute of limitations has run.").

[5] As Plaintiff alleges an injury continuing past February 26, 2012, two years before the complaint was filed, the Court will presume for screening purposes only that the statute of limitations on this claim is satisfied.

"failed to provide any documentation . . . that states plaintiff is not allowed to reside with/or have unsupervised contact with minor children during furloughs," citing the First, Fifth, Eighth, Fourteenth Amendments. (Docket Entry 4 ¶ 27). The Court infers Plaintiff is making a due process argument based on Defendants' failure to respond to his letters.

Plaintiff has failed to set forth a claim upon which relief may be granted. "Access to prison grievance procedures is not a constitutionally-mandated right, and allegations of improprieties in the handling of grievances do not state a cognizable claim under § 1983." *Glenn v. DelBalso*, 599 F. App'x 457, 459 (3d Cir. 2015); *see also Pressley v. Johnson,* 268 F. App'x 181, 184 (3d Cir. 2008) ("Pressley also complained about the investigation and processing of his inmate grievances. Because there is no due process right to a prison grievance procedure, Pressley's allegations did not give rise to a Fourteenth Amendment violation."). Because inmate grievance procedures do not give rise to a liberty interest protected by the Due Process Clause, any failure to properly process and address Plaintiff's grievances is not actionable under § 1983. This claim will be dismissed for failure to state a claim upon which relief may be granted.[6]

---

[6] The Court also notes that Plaintiff has failed to allege any actions by Defendant Sovinee that allegedly violated his

To the extent Plaintiff alleges Defendants Plousis and McGrath violated his due process rights when they failed to respond to his administrative appeals, (Docket Entry 4 § 32), that claim must be dismissed without prejudice for the same reason.

**F. Access to the Courts**

Plaintiff also alleges Defendants Plousis and McGrath violated his right of access to the courts when they did not respond to his administrative appeals, (Docket Entry 4 ¶ 31), and "refused to invalidate, remove, vacate and or overturn" the rejection of Plaintiff's furlough site. (Docket Entry 4 ¶ 33).

The First and Fourteenth Amendments guarantee inmates a right of access to the courts. *See Monroe v. Beard*, 536 F.3d 198, 205 (3d Cir. 2008) (per curiam) (citing *Lewis v. Casey*, 518 U.S. 343, 354-55 (1996)). This right is not, however, unlimited. Inmates may only proceed on access-to-court claims with respect to (1) challenges to their sentences (direct or collateral), (2) conditions-of-confinement cases, and (3) pending criminal charges. *See Lewis*, 518 U.S. at 354-55. Additionally, an inmate

---

constitutional rights. His only mention of Defendant Sovinee is that she was purportedly charged with investigating his furlough site along with Defendants Dickinson and Brodsky. (Docket Entry 4 ¶ 3). "[A]n unadorned, the defendant-unlawfully-harmed-me accusation" is not sufficient for a complaint to state a claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In the event Plaintiff submits a second amended complaint, he must *specifically* set forth how Defendant Sovinee harmed him.

must show that the lack of meaningful access to the courts caused him past or imminent "actual injury." *Id.* at 350-52; *Oliver v. Fauver*, 118 F.3d 175, 177-78 (3d Cir. 1997). To do this, Plaintiff must set forth "the underlying cause of action, whether anticipated or lost," "the official acts frustrating the litigation[,]" and "a remedy that may be awarded as recompense but not otherwise available in some suit that may yet be brought." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002). Conclusory allegations that an inmate suffered prejudice will not support an access-to-courts claim. *Jones v. Brown*, 461 F.3d 353, 359 (3d Cir. 2006) (citing *Lewis*, 518 U.S. at 349-53), *cert. denied,* 549 U.S. 1286 (2007).

Nothing in Plaintiff's complaint addresses how Defendants Plousis' and McGrath's alleged failure to respond to his administrative appeal resulted in the loss of a non-frivolous action. New Jersey law provides an absolute right to appeal any action or decision of a state administrative agency to the Superior Court, Appellate Division. *See Trantino v. N.J. State Parole Bd.,* 764 A.2d 940 (N.J.), *modified on other grounds,* 772 A.2d 926 (N.J. 2001); *see also* N.J. Ct. R. 2:2-3(a)(2). This procedure allows for appeals from "action or *inaction* of a State administrative agency, like the Parole Board . . . ." *Trantino v. N.J. State Parole Bd.,* 687 A.2d 274, 287 (N.J. Super. Ct. App. Div. 1997) (emphasis added), *aff'd as modified on other*

*grounds*, 711 A.2d 260 (N.J. 1998). Thus, Plaintiff had an absolute right to appeal to the New Jersey Appellate Division, even if the Parole Board failed to act on his appeal. Nothing in the complaint suggests he filed for relief in the Appellate Division, or that he was prevented from doing so by some action of Defendants Plousis and McGrath. Plaintiff's access to the courts claim must be dismissed for failure to state a claim. Plaintiff, however, shall be given leave to amend this claim.

**G. Failure to Train or Supervise**

Plaintiff also alleges Defendants Plousis and McGrath are liable for failing "to properly supervise, reprimand, fire, train, or re-train defendants Dickinson, Sovinee/Brodsky . . . ." (Docket Entry 4 ¶ 33).

"Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). State actors are liable only for their own unconstitutional conduct. *Bistrian v. Levi*, 696 F.3d 352, 366 (3d Cir. 2012). A supervisory defendant may be liable if he or she, "with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused the constitutional harm." *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014), *rev'd on other grounds sub nom Taylor v. Barkes*, 135 S. Ct. 2042 (2015).

"Claims alleging a failure to train, failure to discipline, or failure to supervise are a subset of such policy or practice liability." *Womack v. Moleins*, No. 10-2932, 2015 WL 420161, at *3 (D.N.J. Jan. 30, 2015) (citing *Barkes*, 766 F.3d at 316).

Generally, failure to adequately train or supervise can constitute deliberate indifference only if the failure has caused a pattern of violations. *Connick v. Thompson*, 131 S. Ct. 1350, 1360 (2011); *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 409 (1997). "Policymakers' continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees may establish the conscious disregard for the consequences of their action — the deliberate indifference — necessary to trigger supervisory liability." *Connick*, 131 S. Ct. at 1360 (internal citation and quotation marks omitted).

To hold an official liable on a claim for failure to supervise based on a policy or practice, a plaintiff

> must identify a supervisory policy or practice that the supervisor failed to employ, and then prove that: (1) the policy or procedures in effect at the time of the alleged injury created an unreasonable risk of a constitutional violation; (2) the defendant-official was aware that the policy created an unreasonable risk; (3) the defendant was indifferent to that risk; and (4) the constitutional injury was caused by the failure to implement the supervisory practice or procedure.

*Barkes*, 766 F.3d at 317. Plaintiff has not identified a specific supervisory policy or practice that Defendants Plousis and

McGrath failed to employ, therefore his failure-to-supervise claim fails on the first factor.

Likewise, Plaintiff must "'(1) identify the deficiency in training; (2) prove that the deficiency caused the alleged constitutional violation; and (3) prove that the failure to remedy the deficiency constituted deliberate indifference in order to bring a failure-to-train claim.'" *Womack v. Moleins*, No. 10-2932, 2015 WL 420161, at *3 (D.N.J. Jan. 30, 2015) (quoting *Malignaggi v. Cnty. of Gloucester*, 855 F. Supp. 74, 77 (D.N.J. 1994)); *see also City of Canton v. Harris*, 489 U.S. 378, 391 (1989). Plaintiff must also sufficiently allege a close causal link between the training deficiency and the alleged violation. *Malignaggi*, 855 F. Supp. at 77. Plaintiff's complaint does not identify the alleged "deficiency in training" that would suggest Defendants Plousis or McGrath were deliberately indifferent.

Plaintiff's failure to train and failure to supervise claims must be dismissed. He shall be given leave to amend these claims, however.

**H. Conspiracy**

Finally, Plaintiff alleges Defendants Plousis and McGrath conspired with the other defendants to unlawfully deprive him of his furlough days. (Docket Entry 4 ¶¶ 34-35). This claim must also be dismissed for failure to state a claim.

"To make out a conspiracy claim under § 1983, [Plaintiff] must show that 'persons acting under color of state law conspired to deprive him of a federally protected right.' As a threshold matter, however, a § 1983 conspiracy claim only arises when there has been an actual deprivation of a right." *Perano v. Twp. of Tilden*, 423 F. App'x 234, 239 (3d Cir. 2011) (quoting *Ridgewood Bd. of Educ. v. N.E. ex rel. M.E.*, 172 F.3d 238, 254 (3d Cir. 1999)). As noted throughout this Opinion, Plaintiff has failed to sufficiently allege any constitutional violations by Defendants. There cannot have been any agreement to violate any of Plaintiff's rights. The conspiracy claims must be dismissed for failure to state a claim, however they shall be dismissed without prejudice.

**I. Injunctive Relief**

Plaintiff has also not pled sufficient facts to warrant injunctive relief in the form of an order preventing the Parole Board from imposing the condition that he not reside with minor children on any furlough, or from exercising authority over inmates' furlough conditions. (Docket Entry 4 ¶ B). Plaintiffs requesting prospective injunctive relief "must allege a real and immediate threat of future injury." *Doe v. Div. of Youth & Family Servs., 148 F. Supp. 2d 462, 478 (D.N.J. 2001)* (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983)). "Allegations of exposure to illegal conduct in the past alone,

without a showing of continuing adverse effects, do not demonstrate a case or controversy entitling a plaintiff to prospective injunctive relief." *Id.* at 479 (internal citations omitted). A plaintiff must be able to show that a real and imminent harm will occur; a mere possibility of future harm will not suffice. *ZF Meritor, LLC v. Eaton Corp.*, 696 F.3d 254, 300-01 (3d Cir. 2012), *cert. denied*, 133 S. Ct. 2025 (2013).

As Plaintiff has not sufficiently alleged any violations of his rights, and Plaintiff indicates he has since been released from the custody of the Department of Corrections, (Docket Entry 11), there is no justification for the issuance of an injunction as there is nothing to suggest there is a real possibility of "future injury." Plaintiff's request for an injunction must be denied at this time.

**J. Leave to Amend the Complaint**

Plaintiff's complaint as it stands does not set forth a claim on which relief may be granted. Plaintiff may, however, be able to set forth facts that would permit his failure to train, failure to supervise, access to the courts, and conspiracy claims to go forward. He shall therefore be permitted to move for leave to file a second amended complaint within thirty (30) days of the date of this Opinion and Order. Any motion for leave to amend must be accompanied by a proposed second amended complaint. Plaintiff should note that when an amended complaint

is filed, the original complaint no longer performs any function in the case and cannot be utilized to cure defects in the amended complaint, unless the relevant portion is specifically incorporated in the new complaint. 6 Wright, Miller & Kane, *Federal Practice and Procedure* 1476 (2d ed. 1990) (footnotes omitted). An amended complaint may adopt some or all of the allegations in the original complaint, but the identification of the particular allegations to be adopted must be clear and explicit. *Ibid.* To avoid confusion, the safer course is to file an amended complaint that is complete in itself. *Ibid.* Plaintiff may not include in his second amended complaint those claims that were dismissed with prejudice.

**III. CONCLUSION**

For the reasons stated above, Plaintiff's claims against Defendants in their official capacities are dismissed with prejudice. Plaintiff's claims against Defendants Dickinson, Sovinee, and Brodsky are dismissed with prejudice as the statute of limitations has passed. Plaintiff's claims against Defendants Plousis and McGrath are dismissed without prejudice.

An appropriate order follows.

10/30/15
Date

ANNE E. THOMPSON
U.S. District Judge